IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | DOCKET NO.: 1:14-CR-00027-003 (RGA) |
| | ) | |
| WILLIAM CHAPMAN | ) | |

DEFENSE SENTENCING MEMORANDUM

I. **Introduction**

WILLIAM CHAPMAN is due to be sentenced on January 21, 2015. Regrettably, Mr. Chapman has made decisions that hurt him and his family and his future options. He was plagued by not enough money to provide for his mother, his fiancé, his children, and himself. Even with the potential of a bright future on a football scholarship, he was blinded by the extensive pressure to provide that he put on himself and the money he thought would come easy. He did not grow up in a culture that put education above all else.

It is honorable that Mr. Chapman wanted to provide for those who depended on him but he could not see that they all would have been better off if he stayed on the side of the law, went to college and then helped them out. He did not know how to look to the future past his current financial woes and instead he took the path he thought would bring money to pay everyone's expenses at this point in time. Mr. Chapman acknowledges that he went with a bad crowd and that some of the things he did was as an immature kid acting out and all his decisions at that time were adolescent ones.

The following sentencing memorandum is respectfully submitted to this Court in order to assist the Court in imposing an appropriate sentence for William Chapman in this matter.

~ 1 ~

II.     **Sentencing Considerations**

As affirmed in <u>Rita v. United States</u>, 551 U.S. 338 (2007) and by the Third Circuit in <u>United States v. Ricks</u>, 494 F.3d 394 (3d Cir. 2007), explained below, this Court exercises broad discretion in fashioning a sentence which furthers the directives and purposes of sentencing under 18 U.S.C. §3553(a).

Respectfully, Mr. Chapman asks this Court to consider the culture of his early life in addition to the circumstances of these offenses when deciding upon an appropriate sentence for him. Mr. Chapman has been in federal custody since March 6, 2014.

Mr. Chapman asks that the Court exercise its discretion and follow the recommendation of the government and impose a sentence of incarceration of time served.


III.    **Post-Booker Sentencing Considerations**

***Rita v. United States* and the District Court's Discretion to Impose Sentence Tailored to Relevant Section 3553(a) Factors, Regardless of Whether the Sentence Varies from the Sentence Calculated under the Guidelines.**

As revised by <u>United States v. Booker</u>, 543 U.S. 220, 245-46 (2005), the Sentencing Reform Act requires a sentencing court to consider [advisory] Guidelines ranges, see 18 U.S.C. §3553(a)(4), but it permits the court to tailor the sentence in light of other statutory concerns as well, see §3553(a)." This means that a district court's primary obligation is to choose a sentence in light of all the statutory sentencing factors (including the advisory guideline range) in the context of defendant's particular case, and that sentence may or may not be imposed with regard to the guideline range. See <u>United States v. Coleman</u>, 451 F.3d 154, 158 (3d Cir. 2006) ("the

Guidelines' recommended range may be modified or disregarded by a district court upon consideration of the other sentencing factors Congress has identified in §3553(a)").

The Supreme Court unconditionally affirmed this sentencing discretion in Rita. The Court held that while a guideline sentence, at appellate level only, "may" be presumed reasonable, "the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply." Id. at *9. Thus, even in those Circuits that have, unlike the Third Circuit, adopted a presumption of reasonableness, this does not apply in the district courts and is not binding at the appellate level.

Of course the Third Circuit has flatly rejected any presumption of reasonableness. United States v. Cooper, 437 F.3d 324 (3d Cir. 2006). The appellate presumption upheld in Rita in no way changed the standard of appellate review recognized in the Third Circuit in Cooper, 437 F.3d at 330-31. Cooper rejected a presumption of reasonableness and instead simply acknowledged that a within-guideline sentence is "more likely" to be considered reasonable on appeal than a non-guideline sentence. Rita cited Cooper with approval. Rita at *8. Rita, moreover, reaffirmed the abuse of discretion standard of review. Id. at *9 ("appellate 'reasonableness' review merely asks whether the trial court abused its discretion). The presumption for within-guidelines sentences upheld in Rita merely recognizes that where both the Sentencing Commission and the sentencing judge have independently applied the §3553(a) factors, and "the judge's discretionary decision accords with the Commission's view of the appropriate application" in that particular case, "it is probable that the sentence is reasonable." Rita at *8. Further, the Court was clear that "permitting courts of appeals to adopt a presumption of unreasonableness does not mean that courts may adopt a presumption of unreasonableness" to

a non-guidelines sentence. Rita at *11.

Rita emphasized the sentencing court's discretion, moreover, by making plain that the district court need not defer to the judgments of the Sentencing Commission, and that the sentencing court must consider arguments "that the Guidelines reflect an unsound judgment..." Id at *12. Rather than sentencing judges to defer in any way to the Sentencing Commission, "the sentencing statutes envision *both* the sentencing judge and the Commission as carrying out the same basic §3553(a) objectives, the one at retail, the other at wholesale." Id. at *7. In other words, the two are equal and the Commission is no more an "expert" at evaluating the §3553(a) factors than is the judge.

Thus, after properly determining the Guidelines range,[1] a sentencing judge may decide that the Guidelines sentence is not appropriate. He or she may decide:

> That the Guidelines sentence should not apply, perhaps because (as the Guidelines themselves foresee) the case at hand falls outside the "heartland" to which the Commission intends individual Guidelines to apply, USSG § 5K2.0, perhaps because the Guidelines sentence itself fails properly to reflect §3553(a) considerations, or perhaps because the case warrants a different sentence regardless. See Rule 32(f). Thus, the sentencing court subjects the defendant's sentence to the thorough adversarial testing contemplated by federal sentencing procedure.

Id. at *9.

A district court commits error if, in crafting an appropriate sentence, it believes that it is

---

[1] In the Third Circuit, district courts "follow a three-step sentencing process:"
    (1)    Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before Booker.....
    (2)    In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and take into account our Circuit's pre-Booker case law, which continues to have advisory force.....
    (3)    Finally, they are required to exercise their discretion by considering the relevant §3553(a) factors...in setting the sentence they impose <u>regardless whether it varies from the sentence calculated under the Guidelines</u>.

bound by any aspect of the sentencing guidelines. This aspect of post-<u>Booker</u> Third Circuit law was illustrated clearly in <u>Gunter</u>, 462 F.3d at 247-48 (remaining where district court's refusal to consider 100-to-1 crack versus powder differential as advisory amounted to treating the guidelines as mandatory)[2] and <u>United States v. Cooper</u>, 437 F.3d 324, 330-31 (3d Cir. 2006) (rejection notion that guideline sentence is presumptively correct as "com[ing] close to restoring the mandatory nature of the guidelines"). The view of the Guidelines as truly "advisory" has now been affirmed in <u>Rita</u>.

The Court further emphasized the ultimate command of the statute-- that sentence must be "sufficient, but not greater than necessary, to comply with the purposes" of sentencing set out in the statute, the so-called "parsimony provision." <u>Id</u>. at *6, *11 (noting that both the judge and the Commission both determine whether a Guidelines sentence reflects the Section 3553 factors, including the "parsimony provision"); <u>United States v. Gunter</u>, 462 F.3d 243 n.9 (3d Cir. 2006) (recognizing broad mandate of the "parsimony provision").

Accordingly, post-<u>Booker</u>, district courts have much greater discretion in sentencing than was previously afforded. The Third Circuit and now the Supreme Court have spoken firmly in support of this discretion. This Court must exercise its sentencing discretion to further the directives and purposes of 18 U.S.C. §3553, the most salient of which are set forth and applied to Mr. Chapman's case herein.

### IV. Application of Statutory Factors

#### A. The Nature and Circumstances of the Offense and the History and characteristics of WILLIAM CHAPMAN (18 U.S.C. §3553(a)(1))

---

[2] <u>Gunter</u>, 462F.3d at 247 (internal quotations and citations omitted; emphasis added).

WILLIAM CHAPMAN, age 43, was born on October 16, 1971, and raised in Dover, Delaware. He grew up as the only child of Doris Chapman, a single mother. His mother always had a job. She worked and saved and took their two person family from living in an unacceptable neighborhood, to a better apartment, to a home of their own. William's mother, currently resides in this home in Dover, Delaware. This was where William Chapman had been living with his fiancé and her daughter prior to incarceration.

At age 71, Ms. Chapman still drives a car and works part time as a receptionist. She is diabetic and has relied on Mr. Chapman to help her when she has had dizzy spells or other medical incidents. Mr. Chapman worries about how his mother will get along without him.

Wilbur Moore, William Chapman's natural father, never married Doris Chapman but he went on to marry Gwen Chapman and has been with her for over thirty years. Together Wilbur and Gwen have a daughter Brandy. Mr. Chapman says he does not really have a relationship with his father, his father's wife or their daughter Brandy in the way most extended families would. He feels his relationship with his father is more business-like.

Mr. Moore is a pastor to ex-offenders and feels this has given him insight into what his son is going through. Mr. Moore has continued his relationship with Mr. Chapman, visiting and calling him while he is incarcerated. Mr. Moore says that as a pastor he feels that Mr. Chapman knows he made the wrong choices and is ready to leave his old ways behind and move on to a lawful way of life.

Mr. Chapman has been in a three year relationship with Lynn Messick. He refers to her as his fiancé and intends to marry her once he is out of incarceration. He wants to financially provide for her and her eight year old daughter Aniyah who considers him her dad. Ms. Messick

has another daughter, age fifteen, who lives with her dad in Kentucky. Mr. Chapman has a seventeen year old daughter, Ledaya, who lives with her mother in Dover, Delaware. He has a good relationship with his daughter Ledaya and is very proud of her and her school achievements.

William Chapman earned his high school diploma while incarcerated and the diploma was issued through James H. Groves High School. His mother is very proud of this achievement of her son's. Mr. Chapman is enrolled in the Work Plus Program and also Motivational Thinking at the Salem Correctional Facility, as he wants to do whatever he can to help prepare himself to reintegrate into society once released from incarceration.

Wilbur Moore, William Chapman's father, is the owner of the Moore Concrete in Dover, Delaware. Mr. Chapman has worked at Moore Concrete intermittently since the age of thirteen. His job there is laying concrete and his last wage at that job was $12 per hour. Mr. Moore would like to groom him to take over the company and Mr. Chapman would return here to work once released from incarceration. Mr. Chapman wants to learn another trade in case this doesn't work out. He says the physical aspects of laying concrete gets harder as he gets older and because the work is seasonal, the money is unreliable. Although Wilbur Moore says his son's work days were not always 100% of his best efforts, he says he would still rank his son as his best worker overall.

Mr. Chapman was an ambitious youth, working part time at the Playtex factory in the packaging department while still in high school. He also worked at a concession stand at Dover Downs during the time of year that it was open.

Mr. Chapman's overall health is good. He does not have any physical, mental or

emotional problems and he has never been in any type of therapy situation. Mr. Chapman says he has never abused drugs and only drinks socially. He says he has smoked marijuana on occasion. He has said that he started drinking at age thirteen and smoking marijuana at age fifteen.

### B. The Need for the Sentence Imposed to Promote Certain Statutory Objectives

#### 1. To Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment for the Offense.

Mr. Chapman has accepted responsibility for his actions and he has acknowledged his wrongdoing by admitting the facts in the guilty plea that related to his part in the wrongdoing. He is truly sorry for what he has done and wants the court to know that he acknowledges his wrong doing and that he feels he can avoid unlawful conduct in the future. From the time of Mr. Chapman's early life he felt he had to take care of his mother as there was no other male in the house and we can see that attitude reflected in his high school work behavior of taking on more than one job. He concedes that he did have typical rebellious teenage behavior of which he is now regretful. It appears that his intentions were good by wanting to help out those close to him in need although he took on too much, it was more than he could provide for and there was no one to steer him and tell him that it didn't matter what his intentions were, he was going down the wrong road.

It is now important for Mr. Chapman to be involved in life outside of prison so he can give back to the community where he lives, being physically there to assist his mother, and to be an emotional support for both of his daughters and to be there for his fiancé.

#### 2. To Protect the Public from Further Crimes of the Defendant.

Mr. Chapman is sorry he was not associating with people who would have helped him to go forward in a positive way instead of the route he chose. The bad decisions caused him to miss significant events in his daughter Ledaya's life, such as when she was crowned homecoming queen. He also messed up on the once in a lifetime opportunity of a football scholarship to college. Since he has been incarcerated Mr. Chapman has had great anxiety about his mother's financial status as well as concern over Lynn's financial affairs. He worries how both his mother and Lynn are managing with their bills.

In addition to financial matters, Lynn and Aniyah moved out of his mother's home where they were living with him until his incarceration. Aniyah has shown worrying personality changes and her school grades have dropped since Mr. Chapman has been out of her life.

It is very sad to hear Mr. Chapman say he is, "very, very, very, remorseful" for his part in the offense. Although it was a very bad choice, Mr. Chapman was not living the life of luxury, he was in the illegal activity because he was trying to help everyone that relied on him to help pay their bills and make ends meet and he didn't want to let them down. While his actions were certainly not commendable he can and desires to learn skills to live a lawful life.

When released, Mr. Chapman would live with his mother who has many medical issues, he hopes to marry his finance, Lynn, and he wants to be a father to her daughter Aniyah and his own daughter and work for his father in the concrete laying business. Mr. Chapman is prepared to pay his debt to society.

V    **The Nature and Circumstances of the Offense (18 U.S.C. §3553(a)(1))**

    **A. The Offense Conduct**

Offense Conduct for Indictment 1:14-CR-00027-003:

On January 13, 2014, The Bureau of Alcohol, Tobacco and Firearms started a wiretap to get details of illegal dogfighting activity. On January 20, 2014, surveillance units saw Mr. Chapman in the passenger seat of a truck driven by Ed Sturgis. There was also a dog in the rear of the truck. The officers were given information about a dog fight and given instructions to follow the truck. Surveillance then saw the truck with Mr. Chapman and Mr. Sturgis pick up another man and drive on to Felton, Delaware.

On January 28, 2014, the agents learned that Mr. Sturgis was trying to arrange another dogfight and they heard Mr. Sturgis ask Mr. Chapman to manage the particulars of the event to make it happen. The next day after the agents heard that conversation, they heard Mr. Chapman talking to Dashawn Groce about the sale of "Little Mama," Ed Sturgis' dog who just the day before Mr. Sturgis wanted to arrange a fight for. On February 2, 2014, the agents heard a similar conversation about the sale of "Little Mama."

On May 15, 2014, a United States Grand Jury for the District of Delaware returned a three (3) count Superseding Indictment charging William Chapman with counts one through three.

On September 18, 2014, Mr. Chapman appeared before U.S. District Judge Richard G. Andrews and pursuant to a written plea agreement, Mr. Chapman entered a plea of guilty to Count One (1) of the Superseding Indictment. As part of the plea agreement, the government

agreed to recommend a sentence of incarceration of time served.

**Indictment: 1:14-CR-00027-003**:

Count One (1):   Conspiracy to sponsor a dog in an animal fighting venture; in violation of 7 U.S.C. §2156(a)(1) and (b), and 18 U.S.C. §49.

### B. The Need for the Sentence to Promote Statutory Objectives - §3553(a)

A sentence must be "sufficient, but not greater than necessary," to comply with the purposes listed in section 3553(a)(2), namely, the need to: reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from further crimes of the defendant.

Without a doubt the instant offense is a serious one. Clearly Mr. Chapman has made some poor choices including involvement with people that only brought him down and led to this illegal activity. That being said, it is quite clear that Mr. Chapman is more than remorseful of these actions. When he was in high school, before any incarceration, Mr. Chapman was headed to college on a football scholarship. In his sophomore year of High School he set and still holds the record for the longest touchdown made in a high school championship game.

Mr. Chapman has accepted responsibility for his actions and he acknowledges his wrong doing. Given his remorseful and more mature attitude, Mr. Chapman's posing a danger to the public in the future is extremely low and he apologizes for his crimes. At the same time, he is greatly concerned about learning skills so he can move into a completely lawful life upon his return to society.

Mr. Chapman says it has been so terrible for him being away from those he loves and is close to and it is so sorrowful to him to see how this has affected these people that he would never consider doing this again. He says he will find a way to make ends meet by taking on a second job or selling crabs he catches himself, even though that is not very profitable. The seasonal aspect of the concrete business often left him without work and he knows he has to find another type of work to supplement that income during the time he cannot work for Moore Concrete.

### C. Kinds of Sentences Available and the Advisory Guideline Range (§3553(a)(3)&(4))

#### 1. Statutory Provisions

Petitioner has pled guilty to Count One of the Superseding Indictment; Conspiracy to sponsor a dog in an animal fighting venture.

. A term of imprisonment for the offense of Count One of the Superseding Indictment is a maximum of five (5) years incarceration.

A term of supervised release for the offense of Count One of the Superseding Indictment would be three (3) years of supervised release.

#### 2. Guidelines Provisions

While the sentencing range set forth under the guidelines is no longer mandatory, that range and the policy statements set forth in the guidelines are factors to be considered in determining the appropriate sentence. The presentence report correctly calculates the base offense level to be 10, and with adjustment of a two (2) level decrease for acceptance of

responsibility, the Total Offense Level in this case becomes 8 and a Criminal History Category of III, resulting in the following range for imprisonment:

For Count One the guideline range for imprisonment is 6 to 12 months.

For Count One the guideline range for supervised release is not less than one (1) year and not more than three (3) years of supervised release; pursuant to: U.S.S.G. §5D1.2(a)(2).

Petitioner is eligible for probation pursuant to: U.S.S.G. §5B1.2(A)(1). The guideline range is not less than one (1) year and not more than five (5) years.

The guideline fine range for this offense is from $1,000 to $10,000; pursuant to U.S.S.G. §5E1.2(c)(3).

Restitution is not applicable in this case.

For Count One, defendant will pay a special assessment of $100 at the time of sentencing; pursuant to 18 U.S. §3013.

## VI. Conclusion

For all of the above stated reasons, Mr. Chapman requests compassion and leniency in sentencing. Counsel therefore, respectfully submits that the presence of these mitigating factors provide a basis for this Court to exercise its discretion and set a sentence that is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. §3553(a).

Mr. Chapman has been in federal custody since March 6, 2014.

Counsel respectfully requests a sentence of incarceration of time served.

Respectfully submitted,

Peter A. Levin
Attorney for WILLIAM CHAPMAN
1927 Hamilton Street
Philadelphia, PA 19130
(215) 563-3454

## CERTIFICATE OF SERVICE

Peter A. Levin, Esquire, hereby certifies that a true and correct copy of the within Motion has been served upon the Filing User identified below through the Court's Case Management /Electronic Case Files ("em/ecf")system:

Mark M. Lee, Esquire
Assistant United States Attorney
1007 Orange Street, Suite 700
P.O. Box 2046
Wilmington, Delaware  19899-2046

January   18 , 2015

_____
Peter A. Levin, Esquire